IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

- - - - - - - - - - - - - X
UNITED STATES OF AMERICA, :
                          :
      Plaintiff,          :
                          :
vs.                       :        Case No. 4:21-cr-00103
                          :
CARL MURPHY,              :            TRIAL TRANSCRIPT
                          :
      Defendant.          :            Volume III
- - - - - - - - - - - - - X

                          Courtroom, First Floor
                          U.S. Courthouse
                          123 East Walnut Street
                          Des Moines, Iowa
                          Wednesday, August 24, 2022
                          11:41 a.m.

BEFORE:  THE HONORABLE STEPHANIE M. ROSE, Chief Judge,
         and a Jury.

APPEARANCES:

For the Plaintiff:        AMY JENNINGS, ESQ.
                          MALLORY E. WEISER, ESQ.
                          United States Attorney's Office
                          U.S. Courthouse Annex
                          110 East Court Avenue, Suite 286
                          Des Moines, Iowa  50309

For the Defendant:        CHRISTINE BRANSTAD, ESQ.
                          Branstad Law
                          2501 Grand Avenue, Suite D
                          Des Moines, Iowa  50312

                          NICHOLAS A. SARCONE, ESQ.
                          Sarcone Law Firm PLLC
                          501 Southwest Seventh Street, Suite J
                          Des Moines, Iowa  50309

            KELLI M. MULCAHY, CSR, RDR, CRR
               United States Courthouse
          123 East Walnut Street, Room 115
               Des Moines, Iowa 50309

P R O C E E D I N G S

1

2        (In open court, with the defendant present, out of the

3   presence of the jury.)

4        THE COURT:  All right.  So we are on the record in the

5   matter of United States vs. Carl Murphy.  Defendant is

6   personally present and represented by both his attorneys.

7   Government counsel is present as well.

8        We received a note from the jury that reads, "Why do we

9   decide between the 3 amounts of heroin?"  It's dated today and

10  signed at 11:15.

11       I believe the three jurors who signed that are Brian

12  Oleson, Tanner Leth-Nissen, and Adnan Klokic, just based on

13  the -- what you can read there and who else might fit that from

14  the jurors' names.

15       The easy answer is, obviously, "Because," and we could

16  say that.  I proposed a longer version of that just because it's

17  easier to cut down than it is, in my view, to write.

18       So here's one possible answer:  "Under current federal

19  law, drug quantity is a supplemental element of any conspiracy

20  offense charged.  Therefore, juries must deliberate upon the

21  drug quantity issue and reach a unanimous decision, relying upon

22  proof beyond a reasonable doubt, in any case in which a

23  defendant has been found guilty on an underlying federal drug

24  conspiracy.  You should not speculate regarding the reason for

25  this aspect of the law.  Please continue with your

1  deliberations."

2        That's, I think, the most we would want to say.  We can

3  say less.

4        But what's the thought, Ms. Jennings or Ms. Weiser?

5        MS. JENNINGS:  Thank you, Your Honor.  The Government's

6  requested change would be to put a period after "beyond a

7  reasonable doubt" and then strike after that, which is "in any

8  case," just because I believe the Court has already explained

9  that it's a supplemental element of any conspiracy offense

10 charged, and so that's somewhat redundant, that part after

11 "doubt."

12        THE COURT:  Okay.  Mr. Sarcone or Ms. Branstad,

13 thoughts?

14        MR. SARCONE:  I'm just trying to figure out how it

15 would read without that.

16        MS. BRANSTAD:  Your Honor, I think we're okay with

17 either the Court's original answer or with the Government's

18 changes.  We'll leave that at your discretion.

19        THE COURT:  I'll make that change, then, and sign it

20 and send it to the jury.

21        We'll let you know what happens next.  Thanks.

22        MR. SARCONE:  Thank you.

23        MS. WEISER:  Thank you.

24        (Recess at 11:44 a.m. until 12:45 p.m.)

25        (In open court, with the defendant present, in the

1   presence of the jury.)

2        THE COURT:  All right.  We are here in the matter of

3   United States vs. Carl Murphy.  Defendant is personally present

4   and represented by both of his attorneys.  The Government is

5   represented by both its attorneys.

6        We received a note from the jury saying, "Jury is hung.

7   Please advise.  TY," which I assume means thank you.  It's

8   signed by three of our jurors.  As near as I can tell, that's

9   Brian Oleson, Tanner Leth-Nissen, and Rebecca Sandoval's

10  signatures.

11       So we've been discussing sort of informally here in the

12  courtroom the variety of options that we might have.  One option

13  is I give the jury the Eighth Circuit model jury instruction on,

14  essentially, the Allen charge, on the duty to deliberate.  We

15  can do that in one of two ways.  I can send them back an answer

16  to their note sort of like we did with the first question that

17  lays out in writing the Allen charge.  Second option is we bring

18  them into the courtroom and I read them the Allen charge and

19  then we send them back in to deliberate.

20       Or we can make an inquiry of the jury about whether,

21  given the structure of the note this morning, they are simply

22  hung on drug quantity but have reached -- the only reason they'd

23  get to drug quantity is a guilty verdict on the underlying

24  conspiracy, unless they were just asking that question sort of

25  prophylactically before they got to it.

1          So we could inquire what they're hung on.  If they're

2    only hung on the drug quantity question and we have an

3    underlying guilty verdict on the overarching conspiracy, then I

4    think options develop whether the Government has to decide if

5    they're going to accept, if that's the case, a (b)(1)(C) verdict

6    and live with that by way of penalties that are applicable or if

7    they want the potential of a retrial here if the jury can't

8    reach a verdict.  The defendant has similar choices, whether

9    it's riskier for him to go one way or another.  And if the

10   parties don't have the same answer on that, then I think we let

11   the jury do what they're doing and see what happens.

12          But those are sort of the potentials that I can think

13   of.  Before we went formally on the record, I think,

14   Ms. Branstad, you had indicated your preference would be that we

15   give an Allen instruction and just see what happens next.

16          I think the Government was still sort of debating what

17   your position was.  At least one articulated position was maybe

18   we ask the question before we give the Allen charge.  And we

19   hadn't reached the question yet with the parties of whether or

20   not you prefer this done sort of in writing the way we've done

21   with the original question or whether you want them brought into

22   the courtroom in the presence of everybody and further

23   instructions.

24          So, Ms. Branstad, what's your thought?

25          MR. SARCONE:  Your Honor, I will --

1          THE COURT:  Mr. Sarcone.

2          MR. SARCONE:  Thank you.

3          It would be our preference at this point that the jury

4   simply be given a written instruction, the model Eighth Circuit

5   Allen charge, and sent back to deliberate, primarily because

6   typically in this situation -- this is the first note indicating

7   they can't reach a decision -- generally speaking, an Allen

8   charge would be given at that point.

9          If it's given and they come back and they're still

10  hung, then we can ask the question of them as to what they're

11  hung on.  And at that point we'd have already given them an

12  Allen charge and told them to go back and deliberate.

13  Otherwise, there's always the potential that we would do that

14  again.

15         So I would prefer that we give them the Allen charge

16  now, give them an opportunity to try and reach a verdict, and

17  then if they can't after the Allen charge, that we bring them in

18  and ask them that question.

19         THE COURT:  All right.  And I provided the parties in

20  advance of getting together here my proposed, if we were doing

21  this in writing, written instruction, which is just verbatim the

22  Eighth Circuit's model jury instruction, below the note recited

23  here.

24         Any objections or suggested changes or corrections to

25  that proposed answer if we go that route, Mr. Sarcone?

1          And if you need a minute to read it, go ahead and read

2    it.

3          MR. SARCONE:  Thank you, Your Honor.

4          Your Honor, my only suggestion would be to strike the

5    last -- it's not technically the last -- second to last

6    paragraph that starts on the bottom of page 2, "There is no

7    reason," and ends "at a later time."  I'm not sure it's really

8    the sort of -- I realize it's the model instruction, but I think

9    telling them that, "Hey, we really want you to reach a verdict

10   because we don't want to go through a second trial" is sort of

11   superfluous and unnecessary and not really something this jury

12   needs to consider.

13         THE COURT:  Okay.  Government, what's your thought on

14   the various questions here?

15         MS. JENNINGS:  The Government would ask that the Court

16   take the second option, which is to inquire as to whether they

17   have reached a verdict on the issue of whether he's guilty of

18   conspiracy to distribute heroin or not and then, after we get a

19   response from them, instruct them further.  I think it would be

20   the more logical way to do things, given the information and the

21   note that we had from earlier today.

22         I think that the language in the Allen charge at this

23   point with respect to the first full paragraph on the second

24   page talking about failing to establish guilt beyond a

25   reasonable doubt and the defendant should have your vote for a

1　not guilty, I think all of that is assuming that they have --

2　that they're hung on that inquiry of guilt or innocence, and the

3　information we have from the jury is that they're not hung on

4　that right now is what we have from that note.

5　　　　So I think in order to move the needle and help them in

6　a meaningful way with their deliberations, it would be

7　appropriate to inquire at that time.  If they come back and say

8　we can't make a decision even on the issue of guilt or innocence

9　as to the conspiracy charge, then I think this makes more sense

10　to instruct on this at first.

11　　　　If the Court does choose to go forward with the Allen

12　charge at this time without an inquiry to the jury, the

13　Government would request that the entire instruction as set

14　forth in the Government's proposed response be given as it is

15　the model instruction for the Eighth Circuit.

16　　　　MR. SARCONE:  Your Honor, I see you're busily writing.

17　I just wonder if I might be heard for two seconds in response to

18　the Government.

19　　　　THE COURT:  Oh, yeah.  Go ahead.

20　　　　MR. SARCONE:  I would just say that we probably

21　shouldn't -- it would be our position that we shouldn't assume

22　anything from the questions.  It's not explicitly clear what

23　exactly they're --

24　　　　THE COURT:  Yeah.  I tend to agree.

25　　　　I was trying to craft something that sort of at the

1   very end of the Allen charge said if you are only hung on the

2   decision between the three amounts of heroin, which is how they

3   phrased it, as discussed in your note earlier today, and not on

4   the underlying question of whether the defendant is not guilty

5   or guilty of the drug conspiracy, you could advise us, or

6   something, but I'm just not sure how to do that.

7          I don't know that the note necessarily implies that

8   they found guilt.  I think that's the likely reading of it, but

9   I don't know that that's -- without getting into their heads, I

10  don't know that that's certain.  The fact that the notes are

11  signed by different groups of people is interesting to me as

12  well.  We have two people who are the same on both notes and one

13  who is different.

14         So I think what I'm going to do is send back the

15  proposed response as written.  That's the full Allen charge by

16  the Eighth Circuit.  And I think we'll just have to wait and see

17  what happens next.

18         So stand by.  I would guess we'll hear something, you

19  know, as the afternoon progresses, and we'll go from there.

20         MR. SARCONE:  Thank you, Your Honor.

21         MS. JENNINGS:  Thank you.

22         THE COURT:  Be thinking through what you might ask if

23  that's the next question we're asked.

24         (Recess at 1:03 p.m. until 2:58 p.m.)

25         (In open court, with the defendant present, out of the

1  presence of the jury.)

2          THE COURT:  Thank you.  You can be seated.

3          Have you seen the note yet?

4          MS. WEISER:  Yes, Your Honor.

5          MS. BRANSTAD:  Yes.

6          THE COURT:  We are here in the matter of United States

7  vs. Carl Murphy.  The defendant is personally present and

8  represented by his attorneys.  Government counsel is present as

9  well.

10          We received another note from the jury.  This note

11  says, "After more discussion, we are convinced that we have no

12  path forward other than to agree to disagree.  Violence has been

13  avoided so far."  And it's signed by the same three jurors.

14          I would propose something like I have handed the

15  parties, which is telling the jury, "Please advise through a

16  note regarding which question or questions you are unable to

17  reach a unanimous determination regarding:

18          "We are hung on Question One.

19          "We are hung on Question Two.

20          "We are hung on both Question One and Question Two."

21          And then I have pasted what those questions are and

22  signed and dated it.

23          I suppose we could say just, "Please complete the

24  questions below" rather than saying through a note.

25          Thoughts?

1          MS. JENNINGS:  The Government agrees with this

2    approach, Your Honor.

3          THE COURT:  Mr. Sarcone?

4          MR. SARCONE:  Thank you, Your Honor.

5          Your Honor, at this time we prefer a mistrial.  It

6    would be our position that the jury is hung.  If they're hung

7    even as to Question Two, the verdict is not a complete verdict.

8    It's not a verdict at all, and therefore a mistrial should be

9    granted.

10          If the Court does not grant the mistrial, then we have

11    no particular objection to the format of the question that the

12    Court proposes to put to the jury.

13          THE COURT:  Okay.

14          MS. BRANSTAD:  Your Honor, may I be heard?

15          THE COURT:  Go ahead.

16          MS. BRANSTAD:  And just I believe that with no

17    unanimous finding as to weight, it's the same as a finding of no

18    weight, which I believe requires an acquittal or that the jury

19    be discharged as hung.

20          THE COURT:  Okay.  Has either party been able to do any

21    research on this?  Has this come up anywhere that anybody's

22    found?

23          MR. SARCONE:  Your Honor, I did a very -- what I would

24    consider a very brief Westlaw search and was not able to pull up

25    much of anything.  Nothing on point for sure.

1      MS. BRANSTAD:  Your Honor, I would say it was the same,

2  that there was nothing that I found that would allow that, nor

3  any case --

4      THE COURT:  Hold on.

5      The jury had the door open for a minute.

6      Go ahead.

7      MS. BRANSTAD:  Yes, Your Honor.  I found no case that

8  would allow essentially the jury to talk about where they were

9  in the middle.  I found, through a Google search, not through a

10  true legal search, an article that somewhat touched on it.  And

11  I can provide that to the Court, but it was not truly authority.

12      But, Your Honor, I believe that it requires a unanimous

13  verdict on all counts and anything else is essentially allowing

14  an unanticipated bifurcation.

15      THE COURT:  Any response to that?

16      MS. JENNINGS:  Yes, Your Honor.

17      If they are unanimous as to the guilt on Count 1, the

18  first inquiry, then by definition, they are unanimous as to some

19  quantity of heroin.  You can't conspire -- you can't be guilty

20  of conspiracy to distribute heroin and there be no heroin.

21      So we believe that given that, the Court's proposed way

22  of moving forward is appropriate and not an unforeseen

23  bifurcation.

24      THE COURT:  Okay.  Any final thoughts?

25      MR. SARCONE:  None here, Your Honor.

1       Christine?

2       MS. BRANSTAD:  No, Your Honor.  I would just ask for

3  mistrial.

4       THE COURT:  Okay.  I am going to propose this answer.

5  I have changed my statement to them about the check marks to

6  "Please advise upon which question or questions," instead of

7  saying advising through a note.

8       We're going to see -- I don't think there's any real

9  danger in taking the information from them yet.  Once we have an

10 answer, I think then we go to the next step of whether or not

11 that constitutes a verdict or not.

12      I think legally, I agree with the Government, they

13 can't have found guilty, if they have, in fact, found guilty on

14 Count 1, without finding, you know, some amount of heroin was

15 involved in the offense.

16      At this point, they could be split on Question Two

17 between what would be a (b)(1)(B) and a (b)(1)(A) amount.  I

18 don't know what they're hung on, but let's find out, and we'll

19 go from there.

20      So let me go print this, and I would stand by, because

21 I don't think it's going to take long to get an answer.

22      MR. SARCONE:  Thank you, Your Honor.

23      (Recess at 3:03 p.m. until 3:29 p.m.)

24      THE COURT:  They initially checked, "We are hung on

25 Question One."  Then they scratched that off and checked, "We

1 are hung on both Question One and Question two," and then three

2 of them initialed it, and then the foreperson signed it. So I

3 assume at that point it's a mistrial.

4          MS. JENNINGS: Yes.

5          MR. SARCONE: Yes.

6          THE COURT: Okay. Why don't we bring in our jury.

7          (In open court, with the defendant present, in the

8 presence of the jury.)

9          THE COURT: Thank you. Welcome back, everybody. You

10 can be seated.

11          Ladies and gentlemen, I have been advised through a

12 series of notes that you are unable to reach a verdict on either

13 Question One or Question Two.

14          Mr. Oleson, are you the foreperson?

15          JUROR OLESON: Yes.

16          THE COURT: Is that correct --

17          JUROR OLESON: Yes, that's correct.

18          THE COURT: -- you are unable to reach a verdict on

19 either of those questions?

20          JUROR OLESON: That's correct.

21          THE COURT: Then we very much appreciate your service.

22 We're going to discharge you at this time. You go with our

23 thanks. I know jury service can be difficult, and I'm sure this

24 is a frustrating end for most of you.

25          So if you'll just go back in the jury room, I'll be

1 back in just a few minutes to answer questions for you, but you

2 go with our thanks.

3          (In open court, with the defendant present, out of the

4 presence of the jury.)

5          THE COURT:  Okay.  We're going to have to find a hole

6 in all of our respective trial schedules.  I want to get this

7 reset just as quickly as we can for Mr. Murphy.

8          Do you have your calendars with you or do you want me

9 to set up a telephone conference call?

10          MS. BRANSTAD:  Your Honor, I think I probably need to

11 set up a call right now.  I will almost definitely have to move

12 some other trial to make this work.

13          THE COURT:  Okay.

14          MS. BRANSTAD:  Which I'm happy to do.  My other clients

15 that are looking at trial are, I think, all out of custody --

16          THE COURT:  Okay.

17          MS. BRANSTAD:  -- except one.

18          THE COURT:  I'll set up a telephone conference call.

19 It will probably be over a noon hour.  Probably even Monday

20 would be my guess is when -- or tomorrow.  Are you available

21 tomorrow if we set up a conference call?

22          MS. WEISER:  Yes, Your Honor.

23          THE COURT:  Any time tomorrow that doesn't work for

24 you?

25          MS. BRANSTAD:  No, Your Honor.  Tomorrow is very free.

1          THE COURT:  Okay.  We've got stuff going on in the

2     morning over here, but I'll set something, maybe 1 o'clock

3     tomorrow afternoon.

4          Does that work for you, Kelli?

5          (Discussion off the record.)

6          THE COURT:  How about 2 tomorrow?

7          MS. BRANSTAD:  That works for me, Your Honor.

8          THE COURT:  Okay.  Tomorrow you're free?

9          Okay.  We'll talk tomorrow at 2.  We'll pick a new

10    trial date then.  Think through how long that trial may be.  In

11    my experience, the Government tends to go longer on second

12    trials than first trials, so if we need to find more of a

13    three-day window or four-day window, let me know that.  If the

14    defendant has things that he thinks he would now present that

15    would increase the length, let me know that as well.

16         All right.  Thank you all for your work.  I know this

17    is a frustrating end for everybody.  We will see you again on

18    another day.

19         MS. BRANSTAD:  Your Honor, one question.  Are there any

20    limitations on contacting jurors?

21         THE COURT:  Yes.  Don't contact any jurors from this

22    trial until after the second trial.  At that point, talk to me,

23    and we'll see, okay?

24         (Proceedings concluded at 3:34 p.m.)

25

1               C E R T I F I C A T E

2          I, Kelli M. Mulcahy, a Certified Shorthand Reporter of

3   the State of Iowa and Federal Official Realtime Court Reporter

4   in and for the United States District Court for the Southern

5   District of Iowa, do hereby certify, pursuant to Title 28,

6   United States Code, Section 753, that the foregoing is a true

7   and correct transcript of the stenographically reported

8   proceedings held in the above-entitled matter and that the

9   transcript page format is in conformance with the regulations of

10  the Judicial Conference of the United States.

11         Dated at Des Moines, Iowa, this 22nd day of September,

12  2022.


14                          Kelli M. Mulcahy, CSR, RDR, CRR
15                          Federal Official Court Reporter

16

17

18

19

20

21

22

23

24

25