IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 4:21-cr-103 |
| v. ) | |
| ) | |
| CARL MURPHY, ) | GOVERNMENT'S |
| also known as, P, ) | TRIAL BRIEF |
| also known as, C-Note, ) | |
| ) | |
| Defendant. ) | |

## INTRODUCTION

On July 19, 2022, the grand jury returned a Second Superseding Indictment charging Defendant with one count: Conspiracy to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(b)(1)(A) and 846. The Second Superseding Indictment contains a notice of prior conviction, pursuant to Title 21, United States Code, Section 851. Trial is scheduled to begin November 14, 2022, and is anticipated to last three days.

## FACTUAL BACKGROUND

From as early as 2019 and until July 20, 2021, Defendant was a large-scale heroin source of supply for several members of a large drug trafficking organization operating out of the Des Moines Metro. In May 2020, investigators with the Mid-Iowa Narcotics Enforcement Task Force (MINE) and the Federal Bureau of Investigation (FBI) initiated an investigation into a drug trafficking organization (DTO) selling heroin and fentanyl in the Des Moines Metro. Through a variety of investigative

means, agents determined that the DTO distributed heroin/fentanyl daily throughout Des Moines to a large customer base.

Over the course of this investigation, agents obtained authorization or warrants to (1) install and utilize pen register and trap and trace (PRTT) devices on cellular telephones used by members of the DTO; (2) obtain historical and prospective location information for cellular telephones used by members of the DTO; (3) utilize mobile tracking devices on vehicles used by members of the DTO; and (4) obtain search warrants for cellular telephones seized from members of the DTO.

Based on confidential source information, in which members of the DTO expressed to confidential sources that they traveled to Chicago to reup their heroin/fentanyl supply, interceptions concerning product and in conjunction with pole camera observations, text messages reviewed from seized telephones, and global positioning system (GPS) units used on vehicles or telephones of various DTO members, law enforcement identified Defendant as one of the DTO's sources of supply.

Coconspirators would travel to Defendant's residence in Markham, Illinois to buy heroin directly from Defendant. When they arrived, they would enter his house and would usually go into the basement to get heroin. Coconspirators would generally only remain inside for five to 15 minutes, because the sole purpose of the visit was to purchase heroin. On at least one occasion, Defendant did not have the heroin yet and had to ask his coconspirator to wait for him to leave to obtain it. On another, Defendant indicated that he was going to have his son handle the deal. Oftentimes,

when coconspirators returned to Des Moines after getting heroin from Defendant, they would text their customer base a variation of "fire in" or "fire" – indicating that they had new, good product to sell.

Coconspirators purchased dozens, if not hundreds, of grams of heroin each time they replenished their supply from Defendant, doing so several times per month. These coconspirators paid Defendant in cash for the heroin. Coconspirators then sold the heroin to dozens of customers throughout the Des Moines metro. Nearly all of the heroin they sold contained fentanyl.

On July 21, 2021, Defendant was arrested pursuant to a federal arrest warrant. When Defendant was taken into custody, his wife, son, and another adult were left unsupervised inside their home for approximately 15 minutes. Then, during a consent search of Defendant's home, officers found three types of ammunition, an empty gun box, and drug notes. During a subsequent post-*Miranda* interview, Defendant told investigators that small amounts of marijuana and heroin might be found in his home. Defendant claimed to personally use heroin in order to have sexual intercourse with his wife. Defendant explained how he hid his marijuana and heroin use. Defendant admitted there would be weapons belonging to others inside the home. Defendant was shown a photo array of several people that he denied knowing. He claimed to only know three or four of them but was unsure of most of their names. Pole camera footage, witness interviews, and review of phone extractions shows Defendant knew at least six additional people and distributed heroin to many of them.

## STIPULATIONS

The government has offered several stipulations. Defendant intends to enter one:

- A stipulation that the drug exhibits are drugs of the type and quantity reported by the lab;

Defendant is not stipulating to his prior conviction, alleged pursuant to Title 18, United States Code, Section 851, or to the authentication and foundation of the Title III wiretap interceptions or the pole camera footage.

## EVIDENCE

In addition to witness testimony, evidence in this case includes telephone interceptions, pole camera footage, photos, summary exhibits, certified criminal history and BOP records. Transcripts have been prepared to accompany audio exhibits.

The government intends to enter several types of electronic device data. Law enforcement seized multiple cell phones in this case, and extraction reports were generated for each of those cell phones. Each cell phone extraction was performed by Information Technology Specialist – Digital Forensic Examiner Robert Webber of the FBI, who completed a certification pursuant to Rules 902(13) and 902(14).[1] (Gov. Ex. 4.)

---

[1] Under Fed. R. Evid. 902(13) and 902(14), records that are generated by an electronic process or system that produces an accurate result or data copied from an electronic device if authenticated by a process of digital identification, is self-authenticating if accompanied by an appropriate certification. This 2017 amendment intends to eliminate the need for testimony of a foundation and authentication witness. *See* Fed. R. Evid. 902(13), Committee Notes on Rules – 2017 Amendment.

Additionally, Title III wiretap interceptions and telephonic GPS data is stored and maintained by agents with the Federal Bureau of Investigation. Certifications completed by Supervisory Special Agent Jamaal King, pursuant to 902(14), were provided to Defense counsel. (Gov. Exs. 5, 6.) Phone toll data obtained from a subpoena was authenticated pursuant to 902(13) and (14), by a certification completed by Meredith Thacker with T-Mobile. (Gov. Ex.7.) This certification was also provided to Defense counsel.

This information was outlined in the government's Notice filed at docket number 1247. Additionally, the government will present the necessary foundational testimony required.

### I. Criminal History Records

Should the Court rule the information admissible, the government intends to admit at trial criminal history records regarding Defendant's prior conviction outlined in both the Notice filed at docket number 1234, as well as the government's motions in limine, filed at docket number 1255.

The government will enter self-authenticating records from the Bureau of Prisons (BOP) demonstrating that Defendant served more than 12 months imprisonment within the past 15 years. (Gov. Ex. 1.) The government will also present evidence self-authenticating records of Defendant's criminal judgment from the Northern District of Illinois, along with the testimony of Special Agent Mark Fredkove. (Gov. Ex. 2, 3.)

5

## II. Defendant's and Coconspirator Statements

The government will offer statements Defendant made to coconspirators on telephone interceptions and directly to coconspirators, as well as recorded jail phone calls. These are admissions by a party opponent and not hearsay. Fed. R. Evid. 801(d)(2)(A). Additionally, any statements of coconspirators made in these conversations are admissible. *United States v. Mayfield*, 909 F.3d 956, 962 (8th Cir. 2018) (co-conspirators' statements made in furtherance of a conspiracy…are generally non-testimonial and, therefore, do not violate the Confrontation Clause."); Fed. R. Evid. 801(d)(2)(E). These statements also provide the necessary context for Defendant's. *United States v. Spencer*, 592 F.3d 866, 879 (8th Cir. 2010) (affirming admission of statements by a second party to the defendant's conversation as non-hearsay because that party's statements provided context for the defendant's statements).

## III. Rule 1006 summaries

The government intends to admit summaries of voluminous materials, pursuant to Fed. R. Evid. 1006. Specifically, the government intends to admit summaries of thousands of text messages, GPS location information, phone toll analysis.

"The [Federal Rules of Evidence] contemplate that the [Rule 1006] summaries will not be admitted until the court has made a preliminary ruling as to their accuracy." Eighth Circuit Manual of Model Jury Instructions (2014 ed.), § 4.12 Rule 1006 Summaries, Committee Comments (citing Fed. R. Evid. 104; *United States v.*

*Robinson*, 774 F.2d 261, 276 (8th Cir. 1985)). Defense counsel and the Court will be provided with these proposed summary exhibits on the date of this filing.

The government intends to admit exhibits comprised of relevant text message exchanges between Defendant's coconspirator's and their heroin customers. The cell phone extraction reports– in their entirety – contain inadmissible, irrelevant, and prejudicial information. Those reports also contain extraneous information (like message identification numbers, headers, and proprietary codes) that make it extremely difficult for the jury to read.

The government intends to admit exhibits comprised of toll information, relating to telephone and text messages going in and out from Defendant's phones. The full reports from the service provider contain inadmissible, irrelevant, and extraneous information (like longitude and latitude coordinates, peripheral telephone numbers, headers, and proprietary codes) that make it extremely difficult for the jury to read.

The government intends to admit exhibits comprised of GPS location information, relating to Defendant's codefendants travel throughout the ongoing conspiracy. The full reports contain irrelevant, extraneous and difficult to read information, including longitude and latitude and proprietary codes) that make it extremely difficult for the jury to read.

These summary exhibits will assist the jury in understanding and synthesizing the relevant information. It would be impractical for the jury to sift through hundreds or thousands of pages of heavily-redacted documents to review this limited, relevant

information. All the underlying records supporting these exhibits have been disclosed and Defendant will have a full fair opportunity to cross-examine government witnesses about these exhibits.

Accordingly, the requirements for the admission of these summary exhibits have been met, and they should be admitted as substantive evidence at trial and sent back with the jury during deliberations. *See United States v. Boesen*, 541 F.3d 838, 848-49 (8th Cir. 2008) (affirming admission under Rule 1006 of charts that summarized revenue stream – a central issue at trial – and assisted the jury's comprehension of witness testimony).

**IV.    Pedagogic Exhibits**

The government will seek to utilize pedagogic exhibits to summarize or illustrate intercepted calls, pole camera footage, texts or call logs, and other evidence. Instead of utilizing a support person to pull up each individual exhibit, highlight key portions, and put exhibits together, the government will simply have put the admitted evidence into a PowerPoint format. The use of pedagogic exhibits has been utilized in several trials in this district, and there should be no objection to proceeding in this efficient manner.

"[Eighth Circuit] precedent . . . permits parties to use a pedagogic device, such as a summary of witness testimony and/or trial exhibits, to organize testimony and other evidence for the jury." *Hawkins*, 796 F.3d at 865 (internal quotation marks and citation omitted). The practice for admitting these exhibits derives from Federal Rule of Evidence 611(a), which "gives trial courts control over 'the mode of presenting

evidence.'" *Id*. (quoting Fed. R. Evid. 611(a)). These "devices may assist the jury in understanding the evidence, particularly in cases involving complex testimony or transactions." *Id*. "Such summaries need not be admitted into evidence, and therefore can be created by counsel for or during closing argument." *United States v. Crockett*, 49 F.3d 1357, 1361 (8th Cir. 1995).

The underlying records for the pedagogic exhibits will be admitted as exhibits at trial. The pedagogic exhibits will organize and review admitted evidence in a fashion that aids the jury in understanding the basic timeline and seminal events of the case. These exhibits will be utilized in witness examination, as well as closing arguments, but the government does not seek to admit these exhibits or have them with the jury during deliberation. *See Hawkins*, 796 F.3d at 865 ("Our precedent also suggests, but certainly does not establish, that pedagogic devices may be admitted into evidence."); *but see United States v. White*, 737 F.3d 1121, 1136 (7th Cir. 2013) (evidence admitted as Rule 611(a) pedagogical summaries should not be sent to the jury for use in its deliberations).

Respectfully Submitted,

Richard D. Westphal
United States Attorney

CERTIFICATE OF SERVICE
I hereby certify that on November 7, 2022, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:
____U.S. Mail _____ Fax _____Hand Delivery
__X__ECF/Electronic filing ____Other means
ASSISTANT UNITED STATES ATTORNEY
By: */s/ Mallory Weiser*

By: */s/ Mallory Weiser*
Mallory E. Weiser
Amy L. Jennings
Assistant United States Attorneys
U.S. Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, IA 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: mallory.weiser@usdoj.gov
amy.jennings2@usdoj.gov