A TRUE COPY-ATTEST
THOMAS G. BRUTON, CLERK
BY: S/ E. CALASANZ
DEPUTY CLERK
U.S. DISTRICT COURT, NORTHERN
DISTRICT OF ILLINOIS
July 21, 2022

**FILED**

FEB 2 3 2011
FEB 23 2011
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

)
) No. 09 CR 928-3
vs. ) Judge Harry D. Leinenweber
)
CARL MURPHY, aka "Ceno" and )
"C-Note" )

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant CARL MURPHY, aka "CENO" and "C-NOTE," and his attorney, EUGENE STEINGOLD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with four counts of knowingly and intentionally distributing a controlled substance, namely, 50 grams or more of mixtures and substances containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Three of the indictment, which charges defendant with knowingly and intentionally distributing 50 grams or more of cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

## Factual Basis

6.      Defendant CARL MURPHY (hereinafter "MURPHY") will plead guilty because he is in fact guilty of the charge contained in Count Three of the indictment.  In pleading guilty, MURPHY admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

On or about April 9, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, MURPHY, knowingly and intentionally distributed a controlled substance, namely, 50 grams or more of mixtures and substances containing cocaine base in the form of crack cocaine (hereinafter "crack cocaine"), a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

Specifically, on or about April 7, 2009, in the evening, a Chicago police officer working in an undercover capacity (hereinafter "UC1") called MURPHY and told him that a purported customer wanted to buy nine ounces of crack cocaine.  The purported customer was in fact another Chicago police officer working in an undercover capacity (hereinafter

2

"UC2"). MURPHY told UC1 that he would find out how much a supplier would charge for nine ounces of crack cocaine.

On or about April 9, 2009, in the afternoon, UC1 called MURPHY and told him that UC2 wanted to buy nine ounces of crack cocaine. After some negotiation during various phone calls, MURPHY agreed to sell the UCs nine ounces of crack cocaine for $6,500. MURPHY told the supplier that he intended to sell the crack cocaine to the UCs, and the supplier agreed to sell MURPHY the crack cocaine for $6,000.

That night, MURPHY drove a silver Dodge Intrepid to meet the UCs near the intersection of 80th Street and South Union Avenue in Chicago. MURPHY got inside the UCs' vehicle and called the supplier. MURPHY got back into the silver Dodge Intrepid and the UCs followed him to 87th Street and the Dan Ryan Highway.

MURPHY and the UCs parked their vehicles near Harold's Chicken at 100 W. 87th Street. MURPHY got inside the UCs' vehicle and asked the UCs for $6,500. When the UCs refused to give MURPHY the money before they received the drugs, MURPHY called the supplier.

MURPHY then drove the silver Dodge Intrepid to a nearby Jewel parking lot and met the supplier. The supplier gave MURPHY four knotted plastic bags containing crack cocaine. MURPHY then drove to a nearby Home Depot at 200-232 W. 87th Street in Chicago. The UCs met him there.

3

MURPHY got into the UCs' vehicle and placed the four bags of crack cocaine on a scale. The crack cocaine weighed approximately 221-222 grams, being approximately 33-34 grams short of the agreed upon amount. MURPHY called the supplier, put the crack cocaine in his pocket, and got out of the UCs' vehicle.

MURPHY met the supplier inside the Home Depot. The supplier distributed two additional loose chunks of crack cocaine to MURPHY.

MURPHY got into the UCs' vehicle and placed the four bags of crack cocaine and the two loose chunks of crack cocaine on the scale. The crack cocaine weighed approximately 224 grams. MURPHY called the supplier because the crack cocaine weighed less than the agreed upon amount. UC2 agreed to pay MURPHY $6,200 for the crack cocaine. MURPHY delivered the approximately 224 grams of crack cocaine to UC2 and took $6,200 in pre-recorded buy funds for UC2.

7. MURPHY also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline § 1B1.3:

a. On or about November 11, 2008, at Chicago, MURPHY knowingly and intentionally distributed approximately 62.2 grams of crack cocaine to UC1 and UC2 in exchange for $2,100 in pre-recorded buy funds, in violation of Title 21, United States Code, Section 841(a)(1).

b.      On or about February 20, 2009, at Dolton, MURPHY knowingly and intentionally distributed approximately 54.6 grams of crack cocaine to UC1 and UC2 in exchange for $1,800 in pre-recorded buy funds, in violation of Title 21, United States Code, Section 841(a)(1).

c.      On or about June 24, 2009, at Chicago, MURPHY and co-defendant John Evans knowingly and intentionally distributed approximately 124.7 grams of crack cocaine to UC1 and UC2 in exchange for $3,400 in pre-recorded buy funds, in violation of Title 21, United States Code, Section 841(a)(1).  Co-defendant Stephen Patrick supplied MURPHY and Evans with the crack cocaine.

d.      Beginning on or about July 12, 2008 and continuing until on or about September 1, 2009, MURPHY knowingly and intentionally distributed approximately one to two grams of heroin every other day to wholesale and retail customers, including UC1 and UC2, on the south side of Chicago, totaling at least approximately 208 grams of heroin, in violation of Title 21, United States Code, Section 841(a)(1).

e.      On or about December 30, 2008, MURPHY knowingly and intentionally distributed approximately 24.9 grams of heroin to UC1 in exchange for $2,200, in violation of Title 21, United States Code, Section 841(a)(1).

### Maximum Statutory Penalties

8.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of life imprisonment, and a statutory mandatory

minimum sentence of 10 years. Pursuant to Title 18, United States Code, Section 3561,

defendant may not be sentenced to a term of probation for this offense. This offense also

carries a maximum fine of $4,000,000. Defendant further understands that the judge also

must impose a term of supervised release of at least five years, and up to any number of

years, including life.

b.     In accord with Title 18, United States Code, Section 3013, defendant

will be assessed $100 on the charge to which he has pled guilty, in addition to any other

penalty imposed.



6

28.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.   Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: ___2/23/2011___


_____
PATRICK J. FITZGERALD
United States Attorney

_____
CARL MURPHY
Defendant


_____
CAROL A. BELL
Assistant U.S. Attorney

_____
EUGENE STEINGOLD
Attorney for Defendant


18